WILLIAM H. CARSON *vs.* SEWERAGE COMMISSIONERS OF BROCKTON.

Suffolk.    November 23, 1899. — January 30, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Sewer — Statute — Ordinance — Constitutional Law.*

The St. 1892, c. 245, providing that the city council of any city except Boston, or a town, with sewers laid out under Pub. Sts. c. 50, §§ 1-3, or with a system of sewerage under § 7, may establish just and equitable annual charges or rents for the use of such sewers, to be paid by every one who enters his sewer into the

common sewer, and an ordinance of a city thereunder, charging for "unmetered" water service eight dollars, and for "metered" water service thirty cents per thousand gallons of sewage delivered to the sewer, but no charge to be less than eight dollars subject to certain possible discounts, are constitutional.

PETITION for a writ of certiorari to quash an assessment upon the petitioner's property in Brockton for the use of a common sewer. The respondents demurred to the petition. Hearing upon the petition and demurrer, before *Barker,* J., who, at the request of the parties, reserved the case for the consideration of the full court; such order to be made as law and justice might require. The facts appear in the opinion.

*F. M. Bixby,* for the respondents.

*W. H. Carson, pro se.*

HOLMES, C. J. This is a petition for a writ of certiorari for the purpose of quashing the assessment of an annual charge for the use of a common sewer. The assessment was authorized by St. 1892, c. 245, § 1, and by an ordinance in pursuance of that section. It is objected that both statute and ordinance are unconstitutional.

By the statute the city council of any city except Boston, or a town, with sewers laid out under Pub. Sts. c. 50, §§ 1–3, or with a system of sewerage under § 7, may establish just and equitable annual charges or rents for the use of such sewers, to be paid by every one who enters his sewer into the common sewer. The ordinance charges for "unmetered" water service eight dollars, and for "metered" water service thirty cents per thousand gallons of sewage delivered to the sewer, but no charge to be less than eight dollars subject to certain possible discounts. It is argued that the statute is subject to the objections which prevailed in *Sears* v. *Street Commissioners,* 173 Mass. 350, that the charge is a tax which properly should be borne by the public generally, and that there are no provisions for a hearing.

We are of opinion that the petitioner received a special benefit for which he might be charged, and that this case is free from the elements which in *Sears* v. *Street Commissioners* led to the conclusion that the petitioner was assessed without regard to the benefits received by him. No one denies that it was a special benefit to the petitioner to have a sewer built in front of his land. That benefit was the probability that the sewer

would be available for use in the future. But the city, by building it and receiving a part of the cost from the petitioner, did not impliedly bind itself or the general taxes that the sewer should be maintained forever and that the petitioner should be at liberty to use it free of further expense. If building the sewer was a special benefit, keeping the sewer in condition for use by such further expenditure as was necessary was a further special benefit to such as used it.

The charge allowed by the act is a charge for using the sewer, a benefit distinct from that originally conferred by building it. By the statute the charge must be a "just and equitable" charge. These words have been held insufficient to save the constitutionality of a statute in *State* v. *Commissioners of Streets & Sewers*, 9 Vroom, 190, and in *Barnes* v. *Dyer*, 56 Vt. 469. But the facts of those cases were too different to make them conclusive. Here the words are applied solely to those who actually use the sewer. Therefore the benefit to the parties assessed is established. The assessment in order to be equitable must be proportional to the benefit and not in excess of it. The words in this connection sufficiently express an intent to confine the charge within constitutional limits. They are so construed by the ordinance. For by the ordinance the charge is in proportion to the extent of the use, which is a reasonable way of estimating the extent of the benefit received. See *Parker* v. *Boston*, 1 Allen, 361, 367. There is no charge unless the sewer is used. The charge to the plaintiff was $42.53, and therefore under the terms of the ordinance which we have stated must have been determined by meter.

It is said that there is no provision for a hearing. But under the ordinance the only questions are whether the petitioner's sewer enters the common sewer, and what amount of sewage is shown by the meter readings to have been delivered to the sewer. If the petitioner wished to be heard on either of these facts, no doubt he could resort to the courts. On the rate per thousand gallons fixed by the ordinance he was not entitled to be heard. So far as appears, if he is dissatisfied with the rate he is not obliged to use the sewer. But if he were compelled by law to use it and to pay as now for the use, (St. 1890, c. 132,) and recognizing as we must the possibility that, in spite of the

meaning which we attribute to the statute, the rate fixed by the ordinance might be in excess of the benefit received, still in our opinion the act and ordinance would be valid, notwithstanding that mere possibility in the absence of any allegation that the rate fixed did exceed, in fact, the benefit received. In cases of this sort the petitioner has no right of appeal to a jury. *Howe* v. *Cambridge*, 114 Mass. 388. The final decision must be somewhere, and may as well be left to the city council as to any one. *New London Northern Railroad* v. *Boston & Albany Railroad*, 102 Mass. 386, 387, 388. If it is left to them they are not obliged to hear the several parties who may be affected before fixing a general rate. Clearly the rate might have been fixed by the Legislature without a hearing. *Parsons* v. *District of Columbia*, 170 U. S. 45. And whatever differences there may be between the Legislature of the State and inferior although legislative bodies in cases where particular property is to be valued, still when a uniform and self-adjusting rate is adopted under which no question as to proportion can arise, or any other question except the general one whether the rate is high, we are of opinion that the Legislature has power to authorize a city council to determine that question as it has done here. *United States* v. *New Orleans*, 98 U. S. 381. *Railroad Commission cases*, 116 U. S. 307. *Spencer* v. *Merchant*, 125 U. S. 345, 356. *Chicago, Milwaukee, & St. Paul Railway* v. *Minnesota*, 134 U. S. 418, 459. *Reagan* v. *Farmers' Loan & Trust Co.* 154 U. S. 362, 394. See further *Leominster* v. *Conant*, 139 Mass. 384.

If under the pretence of fixing an equitable rate the ordinance should do what amounted to the taking or destruction of property, very possibly that might afford a ground for judicial interference as in other cases where the Legislature fixes rates. *Smyth* v. *Ames*, 169 U. S. 466. *St. Louis & San Francisco Railway* v. *Gill*, 156 U. S. 649. *Chicago, Milwaukee, & St. Paul Railway* v. *Minnesota*, 134 U. S. 418. See *Parker* v. *Boston*, 1 Allen, 361.

*Petition denied.*