### SWIFT v. JACKSON et al.

Circuit Court of Appeals, Tenth Circuit.
January 2, 1930.

No. 49.

238

Chester I. Long, of Wichita, Kan. (Peter Q. Nyce, of Washington, D. C., J. B. Campbell, of Holdenville, Okl., and J. D. Houston and W. E. Stanley, both of Wichita, Kan., on the brief), for appellant.

Webster Ballinger, of Washington, D. C. (Edwin S. Booth, of Washington, D. C., on the brief), for appellees.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge. This is an action at law brought by George M. Swift against Martha Jackson, an incompetent Indian, and Hill Moore, as her guardian, to recover for certain services alleged to have been rendered by Swift, as an attorney-at-law, under a contract entered into May 19, 1919, between W. E. McKinney, purporting to act as guardian of Martha Jackson, and Swift. This contract recited that McKinney, as such guardian, "hereby employs George M. Swift, as his attorney-at-law, to take all necessary and proper steps and to bring such suit or suits as may be necessary, to avoid and cause to be cancelled and held for naught a certain guardian's deed and assignment of royalties, made and entered into on the 9th day of July, 1917, by and between R. W. Parmenter, as guardian of Martha Jackson, a minor, and Thomas Kelly, purporting to convey all the right, title and interest of the said Martha Jackson, in and to the following described land, situate in Creek County, Oklahoma, and all royalties due the said Martha Jackson from said land: The Northwest Quarter, Section Nine (9), Township Eighteen (18) North, Range Seven (7) East." This tract of land, described in the contract, is commonly known as the Barney Tholocco allotment. The contract further provided that, in consideration of such services, Swift should "have and receive one-half of all property, or money which" might "be recovered by him in any suit or suits filed by him, whether received upon any settlement or compromise or upon judgment." It further provided that Swift should "prosecute, or cause to be prosecuted such suit or suits, as" might be "necessary for the recovery" of such "property and royalties." It further provided that "if said suit or suits are defeated" Swift should "claim no further compensation, but in the event" Swift should "recover, or cause to be recovered, either upon settlement or compromise or upon judgment, any part of such property or royalties," Swift should be "entitled to" and should "receive one-half of such recovery as full compensation."

After the making of such contract, in a suit then pending in the District Court for the Eastern District of Oklahoma, entitled United States v. Bessie Wildcat et al., Swift filed an application to file a petition of intervention on behalf of McKinney, as guardian of Martha Jackson, seeking to set aside the contract between Parmenter and Martha Jackson and one Thomas Kelly and others

for the sale of Martha Jackson's interest in such allotment and her royalty interest under an oil and gas lease thereof. Leave to file the petition in intervention was denied. McKinney appealed from this order and the order of the District Court was affirmed in McKinney v. Black Panther O. & G. Co. (C. C. A. 8) 280 F. 486, 493. The facts with reference to this petition and this contract are fully set out in McKinney v. Black Panther O. & G. Co., supra, and Swift v. Parmenter (C. C. A. 8) 22 F.(2d) 142. Swift neither brought nor prosecuted any other suit or suits, pursuant to such contract.

The decree in the lower court, in McKinney v. Black Panther Co., supra, provided that Martha Jackson should receive the sum of $111,670.74, plus 25% of one-eighth of the proceeds derived from said land between March 31, 1918, and the date of the decree, subject to one-eighth of the expenses and charges set out in such decree. After this decree had been entered, the matter of the approval of certain contracts relative to Martha Jackson's interests came before the Secretary of the Interior, with the result that the contract for the sale of Martha Jackson's interest was modified by a supplemental contract dated October 22, 1921, which provided that she should receive $308,000 in addition to the $12,000 that she had already received for the sale of her interest, and that she should be exempted from all liability for charges and costs of litigation and administration of the property.

The first cause of action in the complaint set out that Swift performed the necessary services provided for in his contract with McKinney, as guardian; that the sum of $206,590.30 was saved to, and obtained for the estate of Martha Jackson by reason of Swift's efforts and activities; that under such contract Swift was entitled to receive one-half of such recovery, and sought recovery of $103,295.15 with interest.

The second cause of action sets up that Swift expended the sum of $12,145 as expenses in connection with and in performing such services, and asks for the recovery of that amount with interest.

The answer denied the legality of the appointment of McKinney, as guardian, and denied McKinney had the power to make such contract. It alleged that the contract dealt with restricted property; that the contract had not been approved by the Secretary of the Interior and was void. It alleged the facts with reference to the application of McKinney to intervene in United States v. Bessie Wildcat et al. and the final disposition of such application. It alleged that no recovery was made or could be made by Swift under such contract. It alleged that, during the pendency of the appeal from the decree in United States v. Bessie Wildcat, prosecuted in the name of McKinney by Swift, as attorney for McKinney, Swift voluntarily submitted his claim for services rendered under such contract to the United States Circuit Court of Appeals, Eighth Circuit, and requested that court to allow him reasonable attorney's fees for such services, and that such court rejected his claim in its entirety.

To this answer, Swift filed a reply, which is largely a narration of the history of the litigation with reference to the Barney Tholocco allotment and the guardianship of Martha Jackson.

The trial court sustained a motion for judgment on the pleadings in favor of the defendants and entered judgment dismissing the petition. This is an appeal therefrom.

Counsel for the defendants rely upon a number of grounds to support the ruling of the trial court, but we think it is necessary to notice only two: First, that Swift made no recovery under the contract of May 19, 1919, and by its express terms is entitled to no compensation thereunder; and, second, that the decree in McKinney v. Black Panther Co., supra, is a bar to Swift's claim under the doctrine of res adjudicata.

McKinney's application for leave to intervene, filed by Swift in United States v. Wildcat et al., was denied. Swift appealed from this order to the United States Circuit Court of Appeals for the Eighth Circuit, and the order was affirmed. The suit was therefore defeated. Swift neither brought, nor prosecuted, any other suit, pursuant to the contract. The contract expressly provided that Swift should claim no compensation if said suit or suits, prosecuted by him pursuant to said contract, should be defeated. While a court of law is without jurisdiction to strike down this contract as having been improvidently made [as Judge Lewis said a court of equity would do, in Swift v. Parmenter (C. C. A.) 22 F.(2d) p. 144], it may hold Swift to a strict compliance therewith before he is entitled to any recovery. Swift's petition does not allege that he recovered any judgment upon any suit brought by him or effected any compromise of any suit brought by him, which resulted in any recovery in behalf of Martha Jackson. On the contrary, the undisputed facts, as disclosed by the pleadings, show that the only suit brought by Swift was not compromised, but was defeated.

During the pendency of the appeal in Wildcat v. Black Panther Co., supra, in the Circuit Court of Appeals, Swift and other counsel, who appeared for McKinney, filed a motion in that court, in which they set up that they had given valuable services in procuring the supplemental contract of October 22, 1921, by which Martha Jackson was to receive the sum of $308,000 out of the fund then in the custody of the court. This motion prayed that the court either fix their fees for such services and direct that the same be paid out of Martha Jackson's portion of such fund, or, in the alternative, direct the district court to fix their fees and provide for the payment thereof out of such fund, in the event the court should remand the cause to the district court for the purpose of reforming the decree in accordance with the supplemental contract. The Circuit Court of Appeals denied this motion on two grounds: First, that McKinney was without authority to employ counsel and bind the estate of Martha Jackson therefor; and, second, that the $308,000, to be paid Martha Jackson out of such fund, were restricted funds and the contract btween McKinney and his counsel had not been approved by the Secretary of the Interior. See 280 F. 495.

Counsel for Swift contend that the judgment of the Circut Court of Appeals denying this motion is not a bar because, (1) the jurisdiction of the appellate court was limited to the review of the questions that had been presented in the District Court and no application for attorney's fees had been made in the District Court; and (2) that the decision denying the motion was not on the merits.

■ Where, by a contract between an attorney and client, the attorney is entitled to compensation only out of any amount he may recover in a pending suit and through his services a recovery is had, and the fund recovered is in the custody and control of a court of equity, such court has power to fix the attorney's compensation and direct payment thereof out of the fund. Bray v. Staples (C. C. A. 4) 180 F. 321, 326, 328; Ex parte Plitt, 2 Wall. Jr. 453, 19 Fed. Cas. No. 11,228, at page 883; Colley v. Wolcott (C. C. A. 8) 187 F. 595; Edwards v. Bay State Gas Co. of Delaware (C. C. Mass.) 172 F. 971; United States v. Boyd (C. C. N. C.) 79 F. 858; Adams v. Kehlor Mill. Co. (C. C. Mo.) 38 F. 281; 6 C. J. p. 782, § 394.

In Ex parte Plitt, supra, the court said:
"We have no doubt of the power of the court, where a fund is within its control, as in the case before us, to take care of the

rights of the solicitors who have claims against it, whether for their costs, technically speaking, or their reasonable counsel fees. We can regard them in no other light than as meritorious assignees of a part interest; and they are so regarded in the English chancery. White v. Pearce, 7 Hare, 278."

■■ An appeal in equity brings up the entire record and the Court of Appeals has full power to make and enter its own decree in the cause. Keller v. Potomac Elec. Co., 261 U. S. 428, 444, 43 S. Ct. 445, 67 L. Ed. 731; Sun Co. v. Vinton Pet. Co. (C. C. A. 5) 248 F. 623, 624. Such being the nature of an appeal in equity, we think there can be no doubt of the jurisdiction of the court of appeals to fix attorney's fees for services rendered, pending the appeal, and to direct the payment thereof out of a fund in the custody and control of such appellate court.

We accordingly conclude that the Circuit Court of Appeals had jurisdiction to pass upon the application for allowance and payment of counsel fees out of the fund in its custody belonging to Martha Jackson.

■ It is true that the holding with reference to the authority of McKinney to contract with Swift was based upon the decisions of the Oklahoma courts in the matter of the guardianship of Martha Jackson, which have since been reversed by later decisions of such courts in such guardianship proceedings [see Swift v. Parmenter (C. C. A.) 22 F.(2d) at 145], and the holding, that the contract here sued on was not valid without the approval of the Secretary of the Interior, is in conflict with the later decision of the Eighth Circuit in United States v. Gypsy Oil Co., 10 F.(2d) 487. Nevertheless, the denial of the motion, on the grounds that McKinney was without authority to make the contract and that such contract affected restricted funds and was void because not approved by the Secretary of the Interior, went to the merits of the claim (Spencer v. Watkins (C. C. A. 8) 169 F. 379, 385; 34 C. J. p. 775, § 1194) and is a bar to plaintiff's claim, under the doctrine of res adjudicata, until reversed or set aside in an appropriate proceeding. Gordon v. Ware Nat. Bank (C. C. A. 8) 132 F. 444, 449, 67 L. R. A. 550; Cromwell v. Sac County, 94 U. S. 351, 352, 24 L. Ed. 195; 34 C. J. p. 750, § 1162.

In Gordon v. Bank, supra, the court said:
"It is not material to this estoppel that the judgment which works it may have been erroneous; that the court may have been mistaken in the facts, may have misconceived the law, or may have disregarded the public policy of the nation when it rendered it. It is

sufficient that it had jurisdiction of the subject-matter of the action and of the parties to it, and in this state of the case the established rule of law is that its judgment upon the merits in an action between the same parties, or between those in privity with them, upon the same claim or demand, is conclusive, whether right or wrong, not only as to every matter offered, but as to every admissible matter which might have been offered, to sustain or defeat the claim presented."

For these reasons, it is our conclusion that the court properly sustained the motion for judgment on the pleadings, and the judgment is affirmed with costs.