73 So.2d 552

**OLIVER et al.**

v.

**WATER WORKS & SANITARY SEWER BOARD et al.**

**3 Div. 697.**

Supreme Court of Alabama.

May 27, 1954.

Rehearing Denied June 30, 1954.

Walter J. Knabe, Montgomery, for appellees.

Lea Harris, Montgomery, for appellants.

PER CURIAM.

This case pertains to matters considered in the cases of Water Works and Sanitary Sewer Board v. Dean, Ala.Sup., 69 So.2d

704, and Water Works and Sanitary Sewer Board v. Sullivan, Ala.Sup., 69 So.2d 709.

In the Sullivan case the trial court held that the charge was not authorized, and permanently enjoined the board from collecting it for sewer service. After the decree in question the legislature passed Act No. 176, approved June 30, 1953, which amended section 4 of Act No. 175, approved June 29, 1951, so as to cut out the limited exemption there referred to. The effect was to limit the injunction to apply no longer than June 30, 1953 when the amendment became operative. The charge was made by a resolution of the board passed and adopted by it (not an ordinance of the city commission) on August 15, 1952. So that we affirmed the principle that under said resolution, the charge was collectible after June 30, 1953, supra. Thereafter on September 15, 1953 the board passed another resolution to the same effect as that of August 15, 1952.

In the Sullivan case, supra, we noted that a sewer system laid in the public streets of the city, constructed by the city, was the property of the city regardless of whether the money used in paying for it was obtained by assessments for amounts not exceeding the increased value of the adjoining property by reason of the special benefits which would accrue to such property. And that the revenue so assessed and collected was in the nature of a tax and it was a special use of the taxing power of the city by legislative enactment, citing Armstrong v. City of Montgomery, 251 Ala. 632, 38 So.2d 862; sections 308, 601 to 646, Title 37, Code. We therefore referred to our case of Mitchell v. City of Mobile, 244 Ala. 442, 13 So.2d 664, and held that the revenue derived from such assessments is that of the city to be used by it for a special purpose when necessary and for general purposes when not necessary for the special purpose. Therefore, we drew the conclusion that the city, and consequently the board, had the right to make a charge for the use of its system when not prohibited by law. It is now expressly authorized by Act No. 176, approved June 30, 1953, General Acts 1953, page 229.

We are asked on this appeal to withdraw that feature of the opinion for that its error is illustrated when a subdivision for residential purposes is developed in the city by private owners who build and dedicate streets, and in those streets lay a system of sanitary sewers as well as storm sewers. The contention is that those sewers belong to such private individuals who may confer on the purchasers of residential lots the right freely and without charge to use the sewer system constructed by the subdivision promoters. But that right depends upon a variety of circumstances: (1) Whether the city has accepted the dedicated streets; and (2) if not, whether the sewer system in question connects with that of the city or its disposal arrangement.

Referring to the first inquiry above, we note that an acceptance of the dedication of the streets is necessary for them to become public. Ivey v. City of Birmingham, 190 Ala. 196, 67 So. 506. The mere approval, as required by section 15, Title 56 as a condition to the recording of the plat under section 12, Title 56, Code, is not an acceptance of the dedication of such streets proposed for dedication by the plat. Tuxedo Homes v. Green, 258 Ala. 494, 63 So.2d 812; see, also, Title 37, sections 798, 799. It requires some distinct act by the city to constitute an acceptance, such as a formal resolution or by acts and conduct of the city authorities recognizing it as a dedicated street. After the city has accepted its dedication there are certain duties and responsibilities imposed by statute upon the city. They result from what is now Title 37 beginning with section 502. Prior to that enactment the upkeep of the streets was a governmental function and not a legal duty, except as otherwise provided by some special law. Albrittin v. Mayor & Aldermen of City of Huntsville, 60 Ala. 486. Thereafter it has been a legal duty, imposing responsibility upon the city for negligence in performing it. The power and authority to control streets was made the exclusive prerogative of the city, which created a cor-

responding and coextensive duty and therefore a civil liability for the consequences of a default therein. City of Bessemer v. Whaley, 187 Ala. 525, 65 So. 542; City of Birmingham v. Carle, 191 Ala. 539, 68 So. 22, L.R.A.1915F, 797; City of Bessemer v. Barnett, 212 Ala. 202, 102 So. 23; City of Birmingham v. Whitworth, 218 Ala. 603, 119 So. 841.

On the basis of those cases liability of the city has been established in a great variety of circumstances which create dangerous conditions due to the failure of the city to exercise due care to keep the streets reasonably safe for all the purposes for which its dedication was accepted and completed. Under that duty a negligent default could cause an unsanitary condition for which the city would be liable. Otherwise stated, an acceptance of such streets offered for dedication would impose on the city the duty to use due care to keep the sanitary sewers in usable condition so as not to permit an unsafe condition to result; to keep the storm sewers also in such condition; to keep the streets and sidewalks in such condition. The city could not be held responsible for the exercise of a power it had no right to render. It would have no right to operate upon and service the private enterprise of an individual. And such individual would have no right to operate an enterprise in the public streets of a city without a permit from that city. Section 220 of the Constitution. The city could not be held liable for defects in the street unless it has control of the streets. The promoters may pave their proposed streets at their own expense; but when the city accepts a dedication the promoters lose control. The city then takes charge and section 220, supra, comes into operation.

From this it follows that when the city accepts the dedication of a street, then paved and having storm and sanitary sewers, it has complete control of those facilities. It is immaterial whether we would say that title of the physical properties thereby vested in the city, for certainly the complete control of them so vested. Ownership of the physical properties without the power to control its use would be immaterial. That is of course further emphasized if the sewer system thus taken over is connected with that of the city or uses its disposal facilities. But the status exists by an acceptance of the proposed dedication. Until the city has accepted such dedication, it can of course prohibit the connection of that system with its own, or can permit it on such terms as may be agreed on. And the right, duty and powers of the city as to the free use of such system may depend upon stipulation, and not upon the statutes, supra. MacMahon v. Baumhauer, 234 Ala. 482, 175 So. 299.

The foregoing discussion also answers the inquiry as to the status of such a system constructed by private individuals in streets already dedicated and accepted. It would immediately come under the control of the city and could not be lawfully constructed in the first place or maintained in such streets by private individuals without a permit from the city under section 220 of the Constitution.

█ It is also insisted that the resolution of the board passed on September 15, 1953 was not published as required by section 462, Title 37, or section 402(31) (*o*), Title 37, Pocket Part, Code.

As to section 462, supra, it is sufficient to observe that the resolution in question was by the board and not by the city commission. That statute only applies to ordinances of a city.

As to section 402(31) (*o*), supra, we find that to be a feature of Act No. 775, approved September 11, 1951 (General Acts 1951, page 1359). The Act which justifies the incorporation of a water and sewer board is No. 175, approved June 29, 1951. Act No. 775 does not provide for a corporation. The organization of the board here in question was the formation of a corporation. Therefore it is controlled by Act No. 175, supra. We do not find where that statute requires the publication of resolutions of the board of a general or permanent nature as required by Act No. 775, section 4 (*o*). The contention is therefore not well supported.

 Appellant insists that the charge made for sewer service violates section 23, Constitution, the eminent domain ordinance, also section 212, Constitution, which prohibits the delegation of the power to tax, also section 223, Constitution, which porhibits an assessment for the purpose of raising revenue to construct street paving or sewers, in excess of the increased value of the property so assessed by reason of the special benefits derived from such improvements.

There is here no confiscation of property prohibited by section 23, supra. There is no delegation of the power to tax. Section 212, supra. There is no assessment of property to raise revenue to pave streets or construct sewers referred to in section 223, supra. We pointed this out in the Sullivan and Dean cases, supra. We also showed that when the city constructs a sewer system in public streets and uses funds collected on an assessment authorized by section 223, supra, and applicable statutes, Title 37, beginning with section 512, it is levying a tax to construct the sewer, but the sewer does not belong in any sense to the property owners. They have paid nothing in the first place, but only shared with others the special benefits they receive from the sewers so constructed. The charge for the use of the sewer in no way infringes on section 223. For it is a charge for making use of a certain portion of the streets constructed and maintained to promote the health and general welfare of the city under express authority of law. The power is conferred on the city by section 513, Title 37, Code, to construct such sewers regardless of the method available to raise the money for exercising it.

It is not material in respect to the right to charge for the use of the system what the city proposes to do with the revenue thus collected. The fact that it is to be used in enlarging the system or constructing disposal facilities does not infringe on section 223, supra. There is here no assessment of a tax for the construction of sewers in whole or in part, but only a charge for the required use (section 604, Title 37, Code) of the facilities of the city which is a burden imposed by authority of law upon city dwellers for the privilege of so residing, to prevent impairment of the health and comfort of all the city dwellers alike.

The city transferred its water and sewer facilities to a public corporation created by Act No. 175, approved June 29, 1951. That corporation is now in possession of them under authority of the city and exercising the power conferred by Act No. 175, approved June 29, 1951, and as amended by Act No. 176, approved June 30, 1953. The authority thus conferred completely covers the power to make such a charge for the use of the system and to use the revenue so received to enlarge the system and improve its facilities.

We have treated the contentions raised and ably argued by counsel for appellant, and realize that this situation presents a question different from any heretofore considered, except in the Dean and Sullivan cases, supra, in this State or in any other state which has come to our attention. But we believe the principles we have declared are sound and well supported and the reasoning and conclusion reached are likewise sound. The result is that the demurrer to the bill was sustained without error, and it should be affirmed.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, § 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, STAKELY and MERRILL, JJ., concur.

LAWSON, GOODWYN and CLAYTON, JJ., not sitting.